(No. 84-CC-1448–

STANKO PACKING COMPANY, d/b/a Nebraska Beef Processors, Claimant, v. THE STATE OF ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, PROCUREMENT SERVICES DIVISION, Respondent.

*Order filed July 1, 1986.*

MILLER, SHAKMAN, NATHAN & HAMILTON (R. DICKEY HAMILTON, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (MICHAEL TAYLOR, Assistant Attorney General, of counsel), for Respondent.

Montana, C.J.

This cause comes on to be heard following the filing of a joint stipulation whereby the parties have agreed to the entry of an award herein in the amount of $124,398.09. The parties stipulated as follows:

1. Claimant is a producer and seller of beef and beef products. Claimant's total claim, excluding interest, is $177,044.33. The State and Claimant propose to settle that claim for $124,398.09.

2. In Fiscal Year 1984 the State of Illinois ordered from the Claimant various beef products, the total price of which was $140,485.65. These beef products were to be used by sixteen various State agencies and were to be paid for from eleven fiscal year 1984 line items.

3. Prior to September 20, 1983, Claimant had been selling meat products to the State and the State had been purchasing meat products from Claimant since 1976. Prior to September 20, 1983, all of the meat products tendered for sale by Claimant to the State were accepted and were found to be satisfactory to the State except for a portion of one 1979 shipment with respect to which it was found that Claimant had acted in good faith and that the problem, if any, was caused by the Meat Grading Branch of the United States Department of Agriculture.

4. Pursuant to contracts between Claimant and the State, beef and beef products with a value of $69,882.36 were delivered by Claimant to the State of Illinois, prior

to September 20, 1983. The State has not paid for the beef and beef products delivered.

5. Sometime prior to September 20, 1983, the State became aware of allegations regarding improper meat processing practices by the Cattle King Packing Company, a company that the State understands is owned by the person or persons who own Claimant. On September 20, 1983, the State wrote to Claimant and advised Claimant that it refused to pay for the beef previously delivered by the Claimant and also refused to accept any further shipments of beef.

6. The beef delivered by Claimant and in the possession of the State of Illinois has not been tested for contamination and, because the passage of time has rendered any tests inaccurate, it is now too late to scientifically determine whether the beef received by the State was contaminated. Claimant contends that the beef products it delivered to the State were in accordance with the requirements of the United States Department of Agriculture and in accordance with the State and contract specifications; it has so sworn in its complaint and is prepared to so testify at trial. The State has no evidence that the beef products delivered to the State by the Claimant were anything other than in accordance with the requirements of the United States Department of Agriculture and in accordance with the State and contract specifications.

7. Of the beef held in storage by the State of Illinois 640 pounds of hamburger patties, 1,820 pounds of beef clods and 1,000 pounds of diced beef have been destroyed due to spoilage. Said spoilage occurred when the freezer in which the beef was stored malfunctioned.

8. Beef and beef products which Claimant prepared for shipment to the State pursuant to contracts between them and which the State refused to accept has a value of $61,179.37. Claimant contends that because the meat has been prepared to satisfy State specifications, there is no market for the meat and it has not therefore been able to reduce the loss resulting from the State's refusal to accept delivery. The State has no evidence to refute that contention.

9. Claimant contends that the beef products it prepared pursuant to the contract with the State and which the State refused to accept were in accordance with the requirements of the United States Department of Agriculture and in accordance with the State and contract specifications; it has so sworn in its Complaint and is prepared to so testify at trial. The State has no evidence that the beef products it refused to accept from Claimant were anything other than in accordance with the requirements of the United States Department of Agriculture and in accordance with State and contract specifications.

10. Claimant contends that reasonable storage charges for this meat comes to $4,381.75 for the period through December 14, 1983, and $51.55 per day thereafter, and the State has no evidence to refute that contention. The total storage charges so computed through February 28, 1986, come to $45,982.60.[1]

11. The Claimant's total claim, excluding interest, is as follows:

---

[1] Claimant also contends that in commercial transactions of the kind involved here it is entitled to interest on the money that has been withheld from it, and Claimant claims interest on both $69,882.36 (the value of the beef and beef products delivered) and on $61,179.37 (the value of the beef and beef products the State refused to accept). Interest on these amounts from October 1, 1983, through February 28, 1986, at a rate of 5% per annum, is $15,836.61. (Footnote included in stipulation)

| | |
|---|---|
| Value of beef and beef products delivered to State ................... | $69,882.36 |
| Value of beef and beef products the State refused to accept.............. | $61,179.37 |
| Storage .......................... | $45,982.60 |
| Total........ | $177,044.33 |

12. The parties have agreed that $124,398.09 is a fair and just settlement in this case.

13. A settlement in this amount was previously presented to this Court. The Court declined to acquiesce in the settlement, citing sparseness of the record. Each of the above facts are true and many of them are now in the record pursuant to three sets of interrogatories and requests to admit facts that Claimant has served on the State. Also, because of additional storage since the settlement was first presented, Claimant's claim is now $25,053.31 greater.[2]

14. Since the previous settlement was offered, the funds out of which these products would have been purchased have lapsed. Inasmuch as the Claimant has been able and willing to perform its obligations under the contract and the Respondent is unable to certify that the product delivered and offered was unacceptable, the Court should approve this settlement.

15. The departmental report of Central Management Services is attached hereto and incorporated herein.

Wherefore, the Claimant and Respondent jointly pray that this Court enter an award in favor of the Claimant in the amount of $124,398.09.

---

[2] Because of the passage of time, Claimant's interest claim is also $6,553.51 greater. (Footnote included in stipulation)

We have reviewed the stipulation and the record and now find sufficient support for approving the agreed award.

We note however, a discrepancy in the stipulation and the evidence. Paragraph 14 of the stipulation indicates that since the previous settlement was presented to the Court the funds appropriated with which payment for the products would have been made have lapsed. The previous joint stipulation was filed on October 5, 1984, during fiscal year 1985. The internal memorandum dated December 9, 1985, attached to the stipulation now before us and offered as a departmental report also indicates that fiscal year 1985 funds were obligated for these purchases and had lapsed. If that was in fact the situation, then the State could have settled this matter without this Court's participation. The agency which entered into the purchase contracts could have made the payment any time up to September 30, 1985.

Elsewhere in the record all other documentation, including paragraph 4 of the stipulation before us, the previous settlement stipulation, and the invoices attached to the complaint, indicates that this was a fiscal year 1984 obligation, funds for which would have lapsed on September 30, 1984, more than nine months after the complaint was filed.

Correct and complete fiscal data is essential to a decision in this type of case. Approximately one month after the filing of the stipulation before us, the Respondent filed a substitute internal memorandum. It was identical in substance to the aforementioned memorandum except "FY84" had been substituted for "FY85" as the year of the appropriation. This is the only place in the record where the important issue of lapsing of sufficient funds is addressed. While the report offered

in connection with the previous stipulation provided appropriation line items, it did not provide lapsed balances.

This settlement is hereby approved and the Claimant is hereby awarded the sum of $124,398.09 in full and final satisfaction of this claim.